Michael Yesk (SB#130056)
Yesk Law
70 Doray Drive, Suite 16
Pleasant Hill, CA 94523
925-849-5525
yesklaw@gmail.com
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN K. BURKE and DEBORAH   L. BURKE,<br><br>                 Plaintiffs,<br><br>        v.<br><br>JPMORGAN CHASE BANK, N.A.; WELLS FARGO BANK, N.A. AS TRUSTEE FOR JPMORGAN MORTGAGE TRUST 2008-R2 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2008-R2<br><br>                 Defendants.<br>_____ | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No.: 3-13-CV-04249-WHA

Judge: Hon. William Alsup

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

Date: September 15, 2016
Time: 8:00 a.m.
Ctrm.: 8

## Table of Contents

I. INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND .................................................................................1

III. STANDARD OF REVIEW ...............................................................................7-8

IV. DISCUSSION .......................................................................................................8

    A. Plaintiffs' First, Second, Fifth, Sixth, and Eighth Causes of Action
       Are Valid Because *Yvanova* Doctrine Now Allows Challenges to
       Void Transfers to Securitized Trusts ..............................................8

    B. Plaintiffs Should Be Allowed To Bring A Claim For Wrongful
       Foreclosure Based On the Failed Securitization Because They Will
       Be Unable To Seek Relief Once the Property Has Been Sold To
       A Bonafide Purchaser For Value ..................................................10

    C. Plaintiffs' Claim For Quiet Title Is Valid Due to the Failed
       Securitization and Because the Void Transfer Constitutes An
       Exception To the Tender Rule .......................................................12

    D. Plaintiffs' Request For Cancellation of Instruments Is Valid
       Because the Deed of Trust, Adjustable Rate Rider Note, Notice of
       Default, and Notice of Trustee Sale Pose a Substantial Risk to
       Plaintiffs' Property Interests .........................................................13

    E. Plaintiffs' Claim For Violation of Cal. Civ. Code 2923.5 Is Valid
       Because Defendants Had No Interest In the Loan At the Time They
       Recorded the Notice of Default or the Notices of Trustee Sale ............15

    F. Plaintiffs' Unjust Enrichment Claim Is Valid Because Chase Was
       Not Entitled To Its Payments Under the Loan ...............................16

    G. Defendants Do Not Dispute Plaintiffs' Claim For Fraud, Slander of
       Title, or Violation of the Unfair Competition Law

V. CONCLUSION ...............................................................................................16-17

**Table of Authorities**

**Cases:**

*Adler v. Wal-Mart Stores, Inc.*, (10th Cir. 1998) 144 F.3d 664 ................................7

*Brantley v. Pisaro*, (1996) 42 Cal.4th 1591 ................................7-8

*Carpenter v. Longan* (1872) 83 U.S. 271 ................................4

*D'Amico v. Board of Medical Examiners*, (1974) 11 Cal. 3d 1 ................................8

*Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543 ................................4

*Glaski v. Bank of America*, (2013) 218 Cal.App.4th 1079 ................................9-11, 13

*Henley v. Hotaling* (1871) 41 Cal. 22 ................................4

*Jenkins v. JPMorgan Chase Bank, N.A.*, (2013) 216 Cal.App.4th 497 ................................11-12

*Lewis v. Booth* (1935) 3 Cal. 2d 345 ................................4

*Lona v. Citibank, N.A.* (2011) 202 Cal. App. 4th 89 ................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, (1986) 475 U.S. 574 ................................7

*Seidell v. Tuxedo Land Co.* (1932) 216 Cal. 165 ................................4

*Sprecher v. Adamson Companies*, (1974) 30 Cal.3d 358 ................................8

*Stationers Corp. v. Dun & Bradstreet, Inc.*, (1965) 62 Cal.2d 412 ................................8

*Yvanova v. New Century Mortgage Corporation*, (2016) 62 Cal.4th 919 ................................9-13

**Codes:**

Cal. Bus. & Prof. Code § 17200 ................................17

Cal. Civ. Code § 2923.5 ................................6, 7, 9, 15, 16

Cal. Civ. Code § 2926 ................................5

Cal. Civ. Code § 3412 .................................................................................14

I.R.C. § 860G .........................................................................................8-9

## I.   <u>INTRODUCTION</u>

Plaintiffs SEAN K. BURKE and DEBORAH L. BURKE ("Plaintiffs") hereby file their Opposition to Defendants' Motion For Summary Judgment, or In the Alternative Motion For Partial Summary Judgment. Defendants falsely claim a beneficial interest in Plaintiffs' loan when, in fact, Defendant CHASE's predecessor, Washington Mutual Bank, surrendered its interest in 2008, when it transferred Plaintiffs' loan to the JPMorgan Mortgage Trust 2008-R2 Mortgage Pass-Through Certificates Series 2008-R2 ("2008-R2 TRUST"). Moreover, Defendant CHASE committed fraud by sending two loan modification rejection letters within 48 days of each other, which provided completely different and even conflicting reasons for denying Plaintiffs their loan modification.

## II. <u>FACTUAL BACKGROUND</u>

On August 7, 2007, Plaintiffs refinanced the existing mortgage loan on the Subject Property. Specifically they executed a Deed of Trust ("DOT") and Adjustable Rate Rider. The DOT identified Washington Mutual Bank, FA as the lender and California Reconveyance Company ("CRC") as the trustee. CRC is a wholly-owned subsidiary of Defendant CHASE. The mortgage documents were recorded on August 10, 2007.

Washington Mutual Bank, FA ("WAMU FA") was no longer operating at the time it allegedly originated Plaintiffs' loan and had changed its name to WASHINGTON MUTUAL BANK ("WMB"), one of the Defendants named in this action, on April 4, 2005. On or around September 24, 2008, WMB itself was placed into receivership. However, between the time of WAMU FA's dissolution and WMB being placed into receivership, WMB misled thousands of homeowners into believing that WAMU FA was the originator of their loans.

WAMU irrevocably sold all right, title, and interest in Plaintiffs' loan, for value received, to the JPMorgan Mortgage Trust 2008-R2 Mortgage Pass-Through Certificates Series 2008-R2 ("2008-R2 TRUST"). The 2008-R2 TRUST is a private label mortgage-backed securities trust with a real estate mortgage investment conduit ("REMIC") trust, which makes it subject to the regulations of the Internal Revenue Service and the laws of New York, the state under whose laws it was formed. The sale occurred on or before August 22, 2008, the Closing Date of the MBS Trust as mandated by the governing trust documents. This Closing Date, or 90 days thereafter (REMIC allowance), is the absolute deadline for the trustee of the securitization trust to legally receive and accept contribution of any mortgage loan asset into its trust fund.

The Pooling and Servicing Agreement governing every securitization, including this private securities trust, in accordance with the requirements of the Tax Code of 1986, provides that only the Depositor, and no other entity, is permitted to make the final assignment and transfer of each mortgage loan to the REMIC MBS trust, and the assignment must be made as of the Closing Date of the trust to maintain the favorable pass-through tax status of the trust entity. In addition, only performing qualified mortgage loans which are not in default may be placed into the REMIC MBS trust. Once the trust owns a mortgage loan, only the trustee of the MBS trust has the authority to foreclose, to appoint an agent to foreclose, to assign the deed of trust or substitute a trustee under the deed of trust. Here, the governing PSA provides for the trust administration through an appointed "trustee"; it is the instrument defining the rights of its security holders (certificate-holders) and the ownership of the securitized mortgage loans (i.e., the collectively the asset in the trust fund.). The "servicer" named in the PSA serves as agent for

the trustee – servicing the mortgage loans in the trust fund of the REMIC MBS trust and collecting mortgage payments from the mortgagors.

In accordance with the precise terms and REMIC provisions of the PSA (i.e., required "true sale" of each mortgage loan), securitization sponsor/seller WAMU FA and depositor JPMorgan Acceptance Corporation were each paid full value for selling Plaintiffs' mortgage loan in the verified securitization transaction. However, a review of the chain of title of the mortgaged property in the official records of the Alameda County Recorder does not show any assignment of the mortgage (Deed of Trust) from original lender WAMU FA (or WMB) to any entity, on or before the August 22, 2008 Closing Date of the REMIC MBS Trust, or 90 days thereafter.

Therefore, there is no record of the required intervening assignments of the mortgage From the original lender WAMU FA, or even from WMB, to depositor JPMorgan Acceptance Corporation; and from JPMorgan Acceptance Corporation to Wells Fargo Bank, trustee for the 2008-R2 Trust, within the time frame allowed under the PSA. This was a material breach of the binding and governing terms of the trust agreement and instrument, which resulted in an irreversible break to the chain of title of the Subject Property and ownership of Plaintiffs' mortgage loan.

It is legally impossible for Plaintiffs' Promissory Note to have been transferred to the 2008-R2 Trust without the security instrument, that is, the Deed of Trust. First, the governing trust documents require that both the Note and security instrument be transferred together to the participants in the securitization transaction. See Paragraph 14, supra. Second, it is well-settled law that the security instrument follows the note but not vice versa. The reason is that if the Note and DOT are not together with the same entity, the Note cannot be enforced. A deed of trust is

not valid without the Note. "A deed of trust is a mere incident of the debt it secures... and an assignment of the debt carries with it the security. *Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543, 553. *See also Lewis v. Booth* (1935) 3 Cal. 2d 345, 349 ("a lien is but an incident of the debt secured and cannot be transferred apart therefrom, a transfer of the debt carries with it the lien"). "An assignment of the note carries the mortgage with it while assignment of the latter alone is a nullity". *Carpenter v. Longan* (1872) 83 U.S. 271, 274; *accord Henley v. Hotaling* (1871) 41 Cal. 22, 28; *Seidell v. Tuxedo Land Co.* (1932) 216 Cal. 165, 170; Cal. Civ. Code § 2926.

There is absolutely nothing in the record of the case that even suggests that WAMU somehow retained the beneficial interest in Plaintiffs' DOT after it sold the mortgage loan to the MBS Trust. The Purchase and Acquisition Agreement entered into between Chase and the FDIC in September, 2008 does not include Plaintiffs' mortgage loan or even reference it.

In 2010, Plaintiffs applied for a loan modification. On May 25, 2010, CHASE wrote a letter to Sean Burke rejecting Plaintiffs' application for the stated reason that "your income is insufficient to support the payments under those program guidelines".

Only 48 days later, on July 13, 2010, CHASE sent another letter explaining Plaintiffs' lack of eligibility. This time, the stated reason for rejection was that Plaintiffs were not at risk of default because they had "the ability to pay [their] current mortgage payment using cash reserves or other assets." In other words, CHASE initially rejected Plaintiffs for a loan modification because they had a paucity of income, and later justified their rejection on the grounds that Plaintiffs were too solvent. These mixed, conflicting messages point strongly to fraud on the part

of CHASE. CHASE wished to ensure that Plaintiffs were not able to turn the corner on paying their loan, and they were willing to come up with any justification, regardless of good faith.

On October 26, 2010, Michelle Diokno, as Assistant Secretary of CRC, trustee, executed a Notice of Default and Election to Sell Under Deed of Trust ("NOD"). The NOD was recorded on October 28, 2010. The NOD states that the present beneficiary under the DOT has executed and delivered to the trustee a written Declaration and Demand for Sale. However, the NOD does not identify the purported present beneficiary. The NOD also falsely states that "[t]o find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if or property is in foreclosure for any other reason, contact: JPMorgan Chase Bank, National Association, at 7301 BAYMEADOWS WAY, JACKSONVILLE, FL 32256 (800) 848-9380." CHASE has no right to collect mortgage payments and associated fees and costs from Plaintiffs. There is no evidence that CHASE is a valid loan servicer or beneficiary of Plaintiffs' mortgage loan. As the securitization of Plaintiffs' loan failed, CHASE cannot be acting as servicer for the JPMMT 2008-R2 Trust. As Plaintiffs' loan was sold to the MBS Trust before CHASE acquired certain assets of the failed WMB, it did not succeed to the servicing rights. Moreover, CHASE did not succeed to WAMU FA's beneficial interest in Plaintiffs' loan because the loan was no longer among WAMU FA's assets when CHASE acquired certain assets of the failed bank on September 25, 2008. WELLS FARGO does not hold a beneficial or other interest in Plaintiffs' loan because the securitization of the loan failed.

The NOD was accompanied a Declaration of Compliance with Cal. Civ. Code § 2923.5, stating that the "mortgagee, beneficiary, or authorized agent" had reached out to the borrower "to discuss the borrower's financial situation and to explore options for the borrower to avoid

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

foreclosure as required by Cal. Civ. Code Section 2923.5." This statement was knowingly false because Plaintiffs were never contacted by a valid mortgagee, beneficiary or authorized agent regarding their financial situation and options to foreclosure. Defendants knew that Plaintiffs' loan had been sold to the 2008-R2 TRUST and that the securitization had failed. Therefore, WELLS FARGO is not a valid beneficiary. Defendants also knew that CHASE is not a valid beneficiary or loan servicer.

CHASE did not succeed to the beneficial interest in Plaintiffs' loan for the additional reason that Washington Mutual Bank, FA ceased to exist as a legal entity on or before April 4, 2005.

Specifically, on April 4, 2005, Washington Mutual Bank, FA was changed to WMB. In September 2005, WMB moved its headquarters to Henderson, Nevada. *See* Washington Mutual Inc.'s Annual Report for fiscal year ending December 31, 2005, filed with the SEC as Form 10-K (SEC File No. 1-14667 at http://www.secinfo.com/d11MXs.vGct.htm.) Therefore, as WAMU FA did not exist in September, 2008, CHASE could not have acquired any assets from this defunct legal entity.

On April 13, 2011, Rikki Jacobs, Assistant Secretary of CRC, as trustee executed a Notice of Trustee's Sale ("NOTS 1") which was recorded on April 18, 2011. The trustee sale scheduled for May 11, 2011 did not take place. As this NOTS flows from the fraudulent and void NOD and was not issued by a valid loan servicer or on behalf of a valid mortgagee or beneficiary, it is void and of no legal force and effect.

Just as with the NOD, the void NOTS 1 also falsely alleges compliance with Cal. Civ. Code § 2923.5. This is a knowingly false statement for the exact reason that it was false with

regard to the NOD. Due to the issues with securitization of the 2008-R2 TRUST and the issues

pertaining to WAMU FA and WMB's status as legal entities, CRC had long ceased to be a valid

trustee. CHASE and WELLS FARGO also had ample reason to know that neither CRC nor

themselves had a valid claim to file the NOTS 1 on the Subject Property. On April 18, 2012,

another Notice of Trustee Sale ("NOTS 2") was recorded. The scheduled foreclosure sale did not

take place, but the document itself constitutes an act of wrongdoing, because it falsely and

fraudulently alleged compliance with the California Homeowner Bill of Rights. In reality, just

like NOTS 1, NOTS 2 flowed from an invalid NOD which was fraudulent, null and void.

     As a result of the failure of the securitization of Plaintiffs' mortgage loan, and egregious

violations of California's non-judicial foreclosure statute, none of the named defendants to this

law suit is real party in interest with standing entitled to enforce Plaintiffs' mortgage loan or to

collect mortgage payments from them.


## III. <u>STANDARD OF REVIEW</u>

     To prevail on their motion for summary judgment, Defendant must "demonstrate that

there is no 'genuine issue as to any material fact' and that it is 'entitled to a judgment as a matter

of law.'" *Adler v. Wal-Mart Stores, Inc.*, (10th Cir. 1998) 144 F.3d 664, 670. In applying this

standard, courts view "the inferences from the factual record … in the light most favorable to the

party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, (1986) 475 U.S.

574, 587.

     In a summary judgment motion, the moving party's declarations and evidence will be

strictly construed, "in order to avoid unjustly depriving the plaintiff of a trial." *Brantley v.*

*Pisaro*, (1996) 42 Cal.4th 1591. In contrast, the declarations and evidence offered in opposition to a summary judgment motion must be liberally construed. *D'Amico v. Board of Medical Examiners*, (1974) 11 Cal. 3d 1, *Sprecher v. Adamson Companies*, (1974) 30 Cal.3d 358. Any doubt as to the propriety of granting a motion for summary judgment is resolved in favor of the party opposing the motion. *Stationers Corp. v. Dun & Bradstreet, Inc.*, (1965) 62 Cal.2d 412.

## IV. DISCUSSION

### A. Plaintiffs' First, Second, Fifth, Sixth, and Eighth Causes of Action Are Valid Because *Yvanova* Doctrine Now Allows Challenges to Void Transfers to Securitized Trusts

Defendants attack Plaintiffs' claims for wrongful foreclosure, quiet title, cancellation of instruments, violation of Cal. Civ. Code § 2923.5 and unjust enrichment with the same rationale. Defendants do not believe any issue took place with securitization. In making this argument, Defendants cite to a number of California district cases, only one of which comes from the Northern District. Moreover, none of these cases reflect the most current state of jurisprudence with regard to void transfers to securitized trusts.

Pursuant to Section 860 of the Internal Revenue Code, in order for an investment entity to qualify as a REMIC, all steps in the contribution and transfer of the notes must be a "true and "complete" sale between the parties in order to achieve bankruptcy remoteness. Upon formation of the REMIC-qualified MBS Trust, the Depositor sells the pooled mortgage loans in exchange for the securities certificates issued by the trust. Each step of the "true sale" process must be supported by effective delivery and certification of acceptance of the receiving party of the

endorsed mortgage note and assigned DOT, reflecting the complete intervening assignments and transfers of each mortgage loan from each assignor to the last assignee.

The holding in *Glaski v. Bank of America* noted that the trust's pooling and servicing agreement clearly established a closing date beyond which assignments and transfers to the trust would not be allowed and that the trust was also subject to the Internal Revenue Code ("I.R.C.") requirements imposed on REMIC trusts, which mandate that mortgages be transferred to a securitized trust within ninety (90) days from the date the trust was created. (2013) 218 Cal.App.4th 1079, 1093, fn. 12; I.R.C. § 860G. This is clearly the case here, where the Prospectus established a Closing Date of August 22, 2008. This means that the DOT and Note needed to have been moved into the 2008-R2 TRUST by September 20, 2008. This did not transpire.

A new decision from the Supreme Court of California upholds the wisdom of the *Glaski* doctrine. *Yvanova v. New Century Mortgage Corporation*, (2016) 62 Cal.4th 919. It establishes the pivotal importance of the residential loan note to issues involving the authority, right and power to direct and enforce a deed of trust. *Yvanova* also resolves a long-standing split in decisions of the 4th and 5th Districts of California's Courts of Appeal.

In considering the issue, *Yvanova* held that "*Glaski* provides a more logical answer than *Jenkins*" and that the borrower does have standing to sue when "the foreclosing entity has acted without legal authority by pursuing a trustee's sale, and such an unauthorized sale constitutes a wrongful foreclosure." *Yvanova v. New Century Mortgage Corporation*, S218973, Ct.App. 2/1 B247188. Thus, the *Yvanova* doctrine recognized that "*Glaski* was correct to hold a wrongful foreclosure plaintiff has standing to claim the foreclosing entity's purported authority to order a trustee's sale was based on a void assignment of the note and deed of trust." *Id.*

1  Thus, Plaintiffs now have standing to challenge the failed transfer of their loan to the

2  2008-R2 TRUST. Because *Glaski* has now been upheld, the failed transfer renders the loan

3  documents void not voidable. For that reason, Plaintiffs request that the Court issue declaratory

4  relief proclaiming that the loan became void and that Defendants have no claim against

5  Plaintiffs' Property.

6  Finally, Defendants unfairly try to point to Plaintiffs' attempts to negotiate a loan

7  modification with CHASE as some kind of evidence that they were affirming CHASE's right to

8  a beneficial interest. However, this is simply not the case. Plaintiffs have diligently pursued all

9  avenues that might help them keep their home, and they understood that one way of doing so

10  would have been to ask the party pretending to have an interest in their loan to relent or make

11  som kind of arrangement with them. Regardless of the fact that CHASE does not truly possess a

12  valid interest in Plaintiffs' loan, Plaintiffs still found themselves in the position of having to deal

13  with CHASE. The discussions over loan modifications are a realistic reflection of Plaintiffs'

14  precarious situation with their loan, not a tacit admission of CHASE's dubious beneficial

15  interest.

16

17

18  **B.  Plaintiffs Should Be Allowed To Bring A Claim For Wrongful Foreclosure Based
    On the Failed Securitization Because They Will Be Unable To Seek Relief Once
    the Property Has Been Sold To A Bonafide Purchaser For Value**

19

20

21  In *Yvanova*, the California Supreme Court expressly disapproved *Jenkins v. JP Morgan*

22  *Chase Bank, N.A.* and its holding that borrowers lack standing to challenge an assignment of

23  their deed of trust as void and not merely voidable. 62 Cal.4th at 939; *see also Jenkins v.*

24  *JPMorgan Chase Bank, N.A.*, (2013) 216 Cal.App.4th 497. It also expressly approved of *Glaski*

25  OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
    OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

26

*v. Bank of America*, which the Court found "provides a more logical answer than *Jenkins*." *Id.* at 935; *see also Glaski v. Bank of America,* (2013) 218 Cal.App.4[th] 1079.

In saying that wrongful foreclosure should not apply until a sale takes place, Defendants take up the common argument against applying *Yvanova* to cases like this. The argument is based on the idea that *Yvanova* should simply be viewed as a narrowly defined opinion. Detractors of the *Yvanova* jurisprudence, who do not wish to see the scope of its protections increase, argue that it is only intended to give homeowners the power to challenge post-closing date securitization transfers after they have been rendered homeless by trustee sales. The problem with this interpretation is that it gives no power to the *Yvanova* holding and hamstrings everything it represents. *Yvanova* represents the idea that borrowers should be able to challenge their loans as being void when they are improperly transferred to securitized trusts. It does not make sense that the *Yvanova* Court would stand up for borrowers having this power, only do contradict that philosophy by saying those same borrowers should be unable to use it.

Plaintiffs assert that the Court was simply taking an important first step, which would allow other courts to build upon the decision. This must be the case, because forcing the jurisprudence of *Yvanova* to go on existing in its current state is nothing short of farcical. Because Plaintiffs are homeowners, as opposed to commercial property owners, it is almost certain that another homeowner will be the one purchasing their property. In other words, the purchase will be a bona fide purchaser for value. In California, when a residential property is purchased by a bona fide purchaser for value, the homeowners are unable to obtain injunctive relief to get their homes back, since the property has essentially passed to an innocent third party. Therefore, forcing homeowners to wait for trustee sales before they can take action really leaves

them with no remedy at all. The current version of *Yvanova* has all the effect of a deathrow pardon letter that can only be opened after the execution.

Thus, Plaintiffs ask that the Court find a triable issue of fact does exist with regards to Plaintiffs' claim for wrongful foreclosure. By applying *Yvanova* doctrine in a more nuanced way, the Court could allow Plaintiffs to bring a wrongful foreclosure action based on the repeated attempts to foreclose on this Property. Allowing this would give Plaintiffs some means of protecting themselves from a foreclosure that could not be overturned once the damage was done.

### C. Plaintiffs' Claim For Quiet Title Is Valid Due to the Failed Securitization and Because the Void Transfer Constitutes An Exception To the Tender Rule

The primary reason that Defendants believe Plaintiffs quiet title claim should not succeed is the same one cited for why many of Plaintiffs' other claims should not succeed. Namely, Defendants do not believe that the failure to transfer the DOT and Note to the 2008-R2 TRUST within 90 days of the Closing Date was a serious error. Based on *Glaski, Yvanova*, and the regulations of the Internal Revenue Service, Plaintiffs vehemently disagree. The statutes and emerging case law provide that, where the DOT and Note have not been transferred to a securitized trust within 90 days of the Closing Date, there exists a triable issue of fact that the transfer was void. Moreover, the new case law gives Plaintiffs grounds to challenge the void transfer in such situations.

Defendants also cite the tender rule as grounds for rejecting the quiet title claim. While Plaintiffs are ordinarily required to allege perfect tender in quiet title actions, the courts also

provide exceptions to the tender rule. One such exception occurs where the DOT becomes void. *Lona v. Citibank, N.A.* (2011) 202 Cal. App. 4th 89. In this case, Plaintiffs have alleged a void transfer of the DOT to the 2008-R2 TRUST. Thus, this case falls within one of the tender rule exceptions.

Because of the failed transfer of the DOT and Note to the 2008-R2 TRUST, there exists a triable issue of fact as to the quiet title claim. Thus, the Court should reject Defendants' Motion For Summary Judgment, or Alternatively Partial Summary Judgment as to the quiet title claim.

### D. **Plaintiffs' Request For Cancellation of Instruments Is Valid Because the Deed of Trust, Adjustable Rate Rider Note, Notice of Default, and Notice of Trustee Sale Pose a Substantial Risk to Plaintiffs' Property Interests**

By Defendants' own admission, cancellation of an instrument is proper when "there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable". Cal. Civ. Code 3412. The DOT and the Note should be cancelled at this time, because they have long ceased to belong to the party who once possessed them. WAMU FA is no longer functional and the attempts to transfer Plaintiffs' loan to the 2008-R2 TRUST failed when the Note and the DOT were not transferred within 90 days of the Closing Date. The DOT and the Note now pose a threat of substantial injury to Plaintiffs because they are being wielded by parties who have no interest in them. Not knowing who actually holds beneficial interest in their loan creates substantial risks for Plaintiffs insofar as they do not know who can reliably help them avoid foreclosure.

The NOD and NOTS 1 also pose a risk of substantial injury for much the same reason. CHASE falsely purports to be the holder of beneficial interest in Plaintiffs' loan and the NOD

and NOTS 1 are CHASE's attempt to further solidify that claim. Moreover, they prove why it is so risky to allow the DOT and the Note to remain in effect. CHASE not only can falsely claim ownership of those instruments, but can use them to foreclose on Plaintiffs' Property.

Because allowing the DOT, Note, NOD, and NOTS 1 to remain in effect poses a risk of substantial injury to Plaintiffs, represented by CHASE's repeated attempts at foreclosure, there exists a triable issue of fact for cancelling these instruments. Thus, the Court should allow Plaintiffs request for cancellation of instruments to stand.

**E. Plaintiffs' Claim For Violation of Cal. Civ. Code § 2923.5 Is Valid Because Defendants Had No Interest In the Loan At the Time They Recorded the Notice of Default or the Notices of Trustee Sale**

Defendants attack Plaintiffs' claim for violation of Cal. Civ. Code § 2923.5 on the familiar grounds that they do not believe an issue with securitization took place. Based on the screenshots for the 2008-R2 TRUST, which was formed shortly after WAMU FA originated Plaintiffs' loan and shortly after the time that WAMU FA went out of business, Plaintiffs argue that there is strong evidence to suggest that their loan was sold to the 2008-R2 TRUST. Furthermore, Plaintiffs allege that discovery in this matter will only provide further evidence to support this allegation.

Because of this failed securitization, WELLS FARGO, CHASE, and CRC could not have been valid mortgagees, beneficiaries, or authorized agents at the time that the NOD, NOTS 1, or NOTS 2 were filed. The evidence presented demonstrates a triable issue of material fact as to this matter.

Defendants again bring up the argument that Plaintiffs sought loan modifications with CHASE. Plaintiffs once again assert that this argument is unavailing, and frankly unfair. The fact that Plaintiffs engaged in discussions with one of the wrongdoer in this case does not mean that the wrongdoing should be excused. This places blame upon Plaintiffs when all they were doing was exploring every option to protect their home.

Because of the failed securitization, the NOD, NOTS 1, and NOTS 2 were recorded in violation of the California Homeowner Bill of Rights. None of these documents were filed by entities that had any beneficial interest in the loan. Thus, a triable issue of fact exists as to the violation of Cal. Civ. Code § 2923.5.

### F. **Plaintiffs' Unjust Enrichment Claim Is Valid Because Chase Was Not Entitled To Its Payments Under the Loan**

In order to attack Plaintiffs' unjust enrichment claim, Defendants once again assert that CHASE is a valid beneficial interest holder in the loan. They argue that, because CHASE is the holder of beneficial interest, there is no injustice in CHASE receiving payments based on that loan. Of course, this entire argument falls apart if CHASE does not hold the beneficial interest.

Plaintiffs have asserted repeatedly that the failed securitization to the 2008-R2 TRUST means that CHASE never inherited a beneficial interest. The fact that the P&A Agreement made CHASE a successor in interest to WAMU FA is immaterial, because WAMU FA had already attempted to transfer the loan to the 2008-R2 TRUST. Because this attempt at securitization failed, CHASE never had any stake in Plaintiffs' loan.

As a result of the failed securitization, any payments received by CHASE constitute unjust enrichment. Thus, a triable issue of fact exists as to Plaintiffs' unjust enrichment claim.

### G. **Defendants Do Not Dispute Plaintiffs' Claim For Fraud, Slander of Title, or Violation of the Unfair Competition Law**

Plaintiffs have alleged slander of title and fraud, both based on the fact that Defendants cited conflicting reasons for rejecting Plaintiffs' loan modification. In a May 25, 2010 letter, CHASE stated that it had rejected Plaintiffs' application for a loan modification because their "income is insufficient to support the payments under those program guidelines". Then, on July 15, 2010, CHASE stated that Plaintiffs were ineligible for a loan modification because they were effectively too solvent. These conflicting letters demonstrate that CHASE had no good faith intention of helping Plaintiffs to avoid foreclosure.

Tellingly, Defendants do not ever address the mixed messages sent by these two letters. They also do not attempt to argue against Plaintiffs' claims for slander of title, fraud, and violation of Cal. Bus. & Prof. Code § 17200, all of which derive some of their arguments from the evidentiary value of those letters. Thus, uncontested triable issues of fact exist as to slander of title, fraud, and violation of Cal. Bus. & Prof. Code § 17200.

## V. **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants' Motion for Summary Judgment, or Alternatively Motion For Partial Summary Judgment, in its

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

entirety or, in the alternative, grant leave to amend if Defendants' Motion is granted. Moreover, Plaintiffs request that the Court allow Plaintiffs to maintain and argue at trial any and all of the causes of action that Defendants have not attempted to dispute in their motion.


DATED: August 22, 2016                          Respectfully submitted,


                                                 __/s/ Michael Yesk_____
                                                 Michael Yesk, Esq.
                                                 Attorney for Plaintiffs