IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SEAN K. BURKE and DEBORAH L. BURKE,

    Plaintiffs,

  v.

JPMORGAN CHASE BANK, N.A.; WELLS FARGO BANK, N.A., AS TRUSTEE FOR JPMORGAN MORTGAGE TRUST 2008-R2 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2008 R-2,

    Defendants.

No. C 13-04249 WHA

**ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT AND MOTION TO SEAL**

## INTRODUCTION

In this foreclosure dispute, plaintiffs move for relief from judgment following an order granting defendants' motion for summary judgment. Plaintiffs' motion is **DENIED**.

## STATEMENT

The details of this case are set forth in a previous order granting defendants' motion for summary judgment (Dkt. No. 93), but will now be briefly restated.

### 1. THE MORTGAGE LOAN NOTE AND DEED OF TRUST.

In August 2007, plaintiffs Sean Burke and Deborah Burke obtained a home loan in the amount of $1,246,250.00 from Washington Mutual Bank, F.A. Plaintiffs signed an adjustable rate note promising to make payments on it to WaMu.

In September 2008, WaMu failed and the Federal Deposit Insurance Corporation became its receiver. On the same day, JPMorgan Chase Bank, N.A., executed a purchase and

assumption agreement with the FDIC by which it agreed to purchase certain WaMu assets, including specifically all mortgage servicing rights and obligations. One loan acquired was plaintiffs' loan.

Plaintiffs soon began missing payments, however, and submitted multiple modification applications, all denied, leading to a notice of default and two subsequent notices of trustee sales. Both trustee sales have been postponed.

In 2015, an assignment was recorded memorializing the September 2008 assignment of plaintiffs' deed of trust, and all interests in it, from the FDIC to Chase (Dkt. No. 85-5 at 80).

As of July 2016, plaintiffs remained in default and the loan had an unpaid principal balance of $1,303,620.08 and a total payoff amount of $1,823,963.50.

### 2. PLAINTIFFS' THEORY.

Plaintiffs filed this action in September 2013, and amended their complaint in February 2014. Plaintiffs' claims rested on their theory that Chase and Wells Fargo Bank, N.A., as trustee for JPMorgan Mortgage Trust 2008-R2 Mortgage Pass-Through Certificates series 2008-R2, lacked a beneficial interest in plaintiffs' mortgage loan. Chase allegedly could not enforce the underlying note because WaMu had allegedly sold the interests in plaintiffs' loan to an unknown interim loan purchaser prior to Chase's purchase of WaMu's assets in September 2008. The interim purchaser then sold the same interests to Wells Fargo, as trustee of the security trust. Wells Fargo allegedly could not enforce the underlying note through the trust because there were no intervening assignments of plaintiffs' deed of trust from WaMu to the interim purchaser, and from the interim purchaser to the security trust, as required by the binding terms of the security trust's agreement and instrument.

No evidence of this securitization was ever presented (Dkt. No. 93 at 4). In fact, plaintiffs did not undertake any written or oral discovery during the course of the action (Dkt. No. 110-1 at 2). Furthermore, plaintiffs response to Chase's summary judgment motion appended no evidentiary support.

2

### 3. **FINAL JUDGMENT IN FAVOR OF DEFENDANTS.**

After full briefing and oral argument, Chase's motion for summary judgment was granted. The order stated in pertinent part (Dkt. No. 93 at 4–5):

> This order concludes that summary judgment in favor of defendants is appropriate here because no material dispute exists as to whether Chase holds a beneficial interest in the mortgage. Chase owns the mortgage; plaintiff submits nothing to suggest otherwise.
>
> Defendants submit evidence that demonstrates Chase owns the loan. Chase possesses the original note as well as the deed of trust (Childress Decl. ¶ 9–10). A Chase employee who has reviewed the entire record of the mortgage states in a declaration that no sale or securitization of the mortgage occurred prior to Chase's purchase of WaMu's assets in September of 2008 (Childress Decl. ¶ 10). Moreover, an assignment of deed was recorded in 2015, which "memorialize[d] the transfer that occurred by operation of law on September 25, 2008" of the mortgage from the FDIC as WaMu's receiver to Chase (RJN, Exh. 6).
>
> The only evidence that plaintiffs cite in their opposition brief are blurry screenshots appended to the amended complaint. The screenshots refer to a mortgage-backed security but make *no* identifiable reference to plaintiffs' loan. Plaintiffs make no effort to explain how the screenshots show plaintiffs' loan was securitized. This order holds that no reasonable trier of fact could conclude based on these screenshots that the loan was securitized prior to Chase's purchase of WaMu's assets in September 2008.
>
> All of plaintiffs' claims rise and fall on the theory that defendants do not own the loan. Because Chase demonstrates that it owns the mortgage, all of plaintiffs' claims fail.

Plaintiffs appealed the order granting defendants' motion for summary judgment and final judgment in October 2016 (Dkt. No. 96). Plaintiffs now move for relief from the same order and judgment pursuant to Rule 60(b)(3). This order follows full briefing, oral argument, and supplemental briefing.

**ANALYSIS**

Once an appeal is filed, the district court no longer has jurisdiction to consider motions for relief from judgment. Rule 62.1, however, provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the [district] court may: (1) defer considering the motion; (2) deny the motion; or

(3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."

Final judgment was entered here pursuant to the order granting summary judgment in favor of defendants. Plaintiffs appealed the final judgment. Therefore, this motion proceeds with limited jurisdiction to take one of the actions specified by Rule 62.1.

### 1. RULE 60(b)(3) STANDARD.

Rule 60(b)(3) provides for relief from judgment for fraud, misrepresentation, or misconduct by an opposing party. To prevail, the movant must prove by clear and convincing evidence that (1) the prevailing litigants obtained the verdict through fraud, misrepresentation, or other misconduct, and (2) the conduct complained of prevented the losing party from fully and fairly presenting the defense. *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004). Rule 60(b)(3) "require[s] that fraud . . . not be discoverable by due diligence before or during the proceedings." *Ibid*. The merits of a case are not before the court on a Rule 60(b) motion. *Id.* at 1261.

### 2. PLAINTIFFS FAIL TO PROVE CHASE FRAUDULENTLY ENDORSED THEIR NOTE.

Plaintiffs argue that Chase forged WaMu's endorsement of the mortgage loan note after the FDIC's takeover of WaMu in September 2008. They also present evidence that purports to show Chase engages in a pattern whereby it continually expunges, conceals, and forges away defects in its chain of title in order to present a false impression of ownership. In their reply, plaintiffs conjecture that Chase forged the endorsement in order to create the false impression that "the securitization" was in compliance with the regulations of the Internal Revenue Service. Regardless of plaintiffs' failure to show the loan was securitized in the first place, their fraud argument still fails to show by clear and convincing evidence that defendants obtained any part of the judgment through fraud.

#### A. Ms. Riley's Employment History.

At oral argument, plaintiffs identified as their strongest evidence the deposition testimony of Cynthia Riley from a Florida state court action. Plaintiffs assert that Cynthia Riley, the

4

purported endorser of the note, testified she was laid off from WaMu in 2006. She could not have signed the 2007 note *if* she was laid off in 2006.

The parties spent a majority of the hearing proffering their interpretations of the deposition testimony. Following the hearing, the parties were given the opportunity to submit supplemental briefs addressing, among other points, the timeline of Ms. Riley's employment with WaMu and Chase. Plaintiffs provided a compilation of citations to Ms. Riley's deposition testimony. Defendants submitted argument supported by Ms. Riley's deposition testimony and hundreds of pages of additional evidence, including a declaration from August 2015 in an action before the United States District Court for the Southern District of Indiana.

In the Indiana declaration, a Chase employee testified that Ms. Riley was employed as a vice president with WaMu from 2004 to 2008, and then with Chase from 2008 to mid-2013. Appended to his declaration are business records showing Ms. Riley's matching job history. This declaration further corroborates Ms. Riley's deposition testimony in the Florida action stating (Riley Dep. at 36:25–37:6):

> Q: When did you cease being a vice president with the bank?
> A: 2008.
> Q: Do you know what month?
> A: January I would guess.
> MR. SCHWARTZ: Don't guess.
> A: January 2008.

From these facts, no reasonable jury could determine Chase laid off Ms. Riley prior to when plaintiffs' note was executed in 2007.

Plaintiffs suggest four alternative passages from Ms. Riley's deposition to support their position.

*First* (Riley Dep. at 38:14–20):

> Q: And how long did you manage secondary delivery for?
> A: Till 11 of 2006.

5

| | Q: | And I take it you're saying you managed secondary delivery approximately from June of 2004 to November of 2006? |
|---|---|---|
| | A: | Correct. |

This does nothing to prove Ms. Riley was laid off in 2006 — certainly not by clear and convincing evidence. It merely pertains to her role in secondary delivery operations. After she left her managerial role with secondary delivery, Ms. Riley "did project management work [at WaMu] for about 12 months" (Riley Dep. at 61).

*Second* (Riley Dep. at 57:2–16):

| | Q: | Okay. Did there come a point in time that you shipped to Florence, South Carolina? |
|---|---|---|
| | A: | When the vault was built — I don't know if that — I can't answer that. |
| | MR. SCHWARTZ: | If you don't know, say you don't know. |
| | A: | I left the department. |
| | Q: | Okay. When did you leave the department? |
| | A: | In November of 2006. |

Again, this only shows that Ms. Riley left a *department* in November 2006, not that she left *WaMu*.

*Third* (Riley Dep. at 64:14–65:9):

| | Q: | Are you clear that Jacksonville's operation, as far as secondary delivery operations, closed down in November of 2006? |
|---|---|---|
| | MR. WEISS: | Object to the form of the question. |
| | A: | We were laid off the end of that year. |
| | Q: | Okay. And so is your answer yes, there was — strike that. Is it your answer that there were no secondary delivery operations going on in Jacksonville by the end of 2006? |
| | A: | Correct. |
| | Q: | And when you say you were laid off, you were laid off from the department. You continued to work for JP Morgan; correct? |

6

|  |  |  |
|---|---|---|
| | MR. SCHWARTZ: | Form. |
| | A: | I was laid off and subsequently got a job back with JP Morgan in January. |
| | Q: | January of what year? |
| | A: | 2009. |
| | Q: | And when were you laid off? |
| | A: | It had to have been 11, November. |

This is the only passage that potentially supports plaintiffs' theory that Ms. Riley was not employed by WaMu when the note was executed. To the contrary, however, as evident from the previous passages and the supplementary declaration of Chase, Ms. Riley was employed by WaMu as a vice president until 2008 and then with Chase from 2008 until mid-2013. In any event, this one passage amongst other evidently contradictory statements in this very deposition does not rise to the clear and convincing evidence standard required by our court of appeals for Rule 60(b)(3) relief.

*Finally* (Riley Dep. at 70:17–21):

|  |  |  |
|---|---|---|
| | Q: | I'll be glad to. Does the signature that appears there appear similar to the — to the facsimile stamps that were used during your tenure between June of 2004 and November of 2006? |
| | A: | This is my signature, yes. |

This passage, at most, shows a misunderstanding on the part of the deposing attorney. Ms. Riley's testimony, on the other hand, simply identifies her signature.

### B. Plaintiffs' Other Evidence.

Plaintiffs also submit unexplained screenshots and, separately, testimony from purported expert William Paatalo asserting there is "an abundance of information now in the public domain, as well as within the realm of [his] personal investigative experiences, to universally suggest that the largest servicers create note endorsements and/or allonges when missing" (Dkt. No. 106-1 ¶19). Paatalo also asserts that he has personal knowledge of an attorney for Chase in a similar case who admitted that a foreclosure plaintiff's 2005 note with a similar endorsement

7

1 by Riley was not endorsed until September 2013, when Chase felt the need to do so in
2 preparation for litigation (*ibid.*).

That plaintiffs' reply and oral argument all but abandoned this additional evidence is revealing. Plaintiffs must show that the conduct complained of prevented them from fully and fairly presenting the defense, in addition to showing defendants obtained the verdict through fraud. *Casey*, 362 F.3d at 1260. While WaMu provides declarations and evidence supporting the legitimate endorsement of plaintiffs' note, plaintiffs' purported expert waxes on corporate misbehavior and an action in Rhode Island state court where WaMu endorsed a different note for a different plaintiff in anticipation of litigation. This offering, as well as Ms. Riley's testimony, fails to show by clear and convincing evidence any conduct that prevented *plaintiffs*, rather than the public at large or a Rhode Island plaintiff, a full and fair defense or that defendants obtained their verdict through fraud — Plaintiffs' motion is **DENIED**.

Plaintiffs additionally move to seal an exhibit from Paatalo's declaration containing the transcript of Michael McCormick, a former Chase employee, from the Rhode Island state court matter. Local Rule 79-5(e) requires identification of, and notification to, the opposing party who designated the subject document as confidential *pursuant to a protective order*. Despite complying with the notification and identification process, neither plaintiffs nor Chase indicate the transcript was subject to a protective order. Additionally, neither party claim any privileges or trade secrets are exposed in the transcript. This is insufficient to take the extraordinary step of denying public access to the courts. The motion to seal is **DENIED**.

## CONCLUSION

For the reasons stated herein, plaintiffs' motion for relief from judgment is **DENIED** and plaintiffs' motion to seal is **DENIED**.

The Court suspects that the motion for relief from judgment was really intended to lard the record with new angles and extra evidence that could have been used seven months ago when the summary judgment motion was decided. In their pending appeal, counsel shall please be

8

frank with our court of appeals as to what was and was not before the Court at the time of the original ruling.

**IT IS SO ORDERED.**

Dated: April 11, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE